Neil M. Zipkin (NZ 4718)
Chester Rothstein (CR 1417)
Michael P. Kenney (MK 0740)
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, New York  10016
(212) 336-8000

Attorneys for Plaintiff
Prime Time Toys, Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – –x

PRIME TIME TOYS, LTD,                          :
                                               :
                           Plaintiff           :     Civil Action No.: **1:08-cv-00449-MGC**
                                               :                 ECF Case
                 v.                            :
                                               :
JA-RU, INC.; JA-RU (HK), LTD and MARLON        :
CREATIONS, INC.,                               :
                                               :
                         Defendants.           :

– – – – – – – – – – – – – – – – – – – –x

### SECOND AMENDED COMPLAINT

Prime Time Toys, Ltd. (hereinafter referred to as "PTT") through their attorneys,

complaining of Ja-Ru, Inc.; Ja-Ru (HK), Ltd. and Marlon Creations, Inc. (hereinafter

referred to as "Marlon"), alleges as follows:

### THE PARTIES

1.     Plaintiff PTT is a corporation duly organized and existing under the

laws of Hong Kong, having offices and places of business at Suite 5,2/F, Kwong Sang

388643.3

Hong Centre, Kwun Tong, Hong Kong and 200 Wanaque Avenue, Suite 101, Pompton

Lakes, NJ 07442. PTT is transacting and doing business within this judicial district.

2.     Upon information and belief, Exhibit F is a true and correct

photograph of a floating squirting toy offered for sale, sold and/or imported into the

United States by Ja-Ru, Inc. and Ja-Ru (HK), Ltd. The toy shown in Exhibit F is

hereinafter referred to as "the JA-RU PUMPER VERSION 1".

3.     Upon information and belief, Exhibit G is a true and correct

photograph of a floating squirting toy offered for sale, sold and/or imported into the

United States by Defendants Ja-Ru, Inc.; Ja-Ru (HK), Ltd. and Marlon. The toy shown in

Exhibit G is hereinafter referred to as "the JA-RU PUMPER VERSION 2".

4.     Upon information and belief, defendant Ja-Ru, Inc. is a corporation

organized and existing under the laws of the State of Florida, having a principal office at

4030 Phillips Hwy, Jacksonville, FL 32207 and defendant Ja-Ru (HK), Ltd. is a

corporation duly organized and existing under the laws of Hong Kong, having offices and

places of business at 11/F., Inter-Continental Plaza, No. 94 Granville Road, Kowloon,

Hong Kong. Hereinafter, defendants Ja-Ru, Inc. and Ja-Ru (HK), Ltd. are collectively

referred to as "Ja-Ru".

5.     Upon information and belief, defendant Marlon is a corporation

organized and existing under the laws of the State of New York, having a principal office

at 35-01 36th Avenue, Long Island City, NY 11106. Marlon is transacting and doing

business as a distributor of toys in this judicial district and is subject to the jurisdiction of

this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

6.    This action arises under the patent laws of the United States, 35 U.S.C. § 100 *et seq*.  This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§1331 and 1338.

7.    Venue is proper pursuant to 28 U.S.C. §§1391 and 1400(a).

8.    Upon information and belief, Ja-Ru has offered to sell the JA-RU PUMPER VERSION 2 to Marlon within the State of New York, that Ja-Ru has sold Marlon the JA-RU PUMPER VERSION 2 within the State of New York and that Ja-Ru has shipped the JA-RU PUMPER VERSION 2 to Marlon for receipt within the State of New York.

9.    Upon information and belief, Ja-Ru annually participates as an exhibitor at the Toy Industry Association, Inc. (hereinafter "TIA"), Toy Fair held at the Jacob Javits Center on 11th Avenue between West 34th Street and West 39th Street.  On information and belief, Ja-Ru offers for sale and sells toys at the TIA Toy Fair.  Ja-Ru was a registered exhibitor at the 2007 TIA Toy Fair held in Manhattan from February 11-14, 2007 and, on information and belief, occupied booth number 5367.  Attached as Exhibit A is a true and correct copy of Ja-Ru's exhibitor entry from the TIA website for the 2007 TIA Toy Fair.  On information and belief, Ja-Ru is registered to be an exhibitor at the 2008 TIA Toy Fair, taking place at the Jacob Javits Center from February 17-20, 2008.

10.    Upon information and belief, Marlon was a registered exhibitor at the 2008 TIA Toy Fair held in Manhattan from February 17-20, 2008 and committed acts

of patent infringement at the 2008 Toy Fair.  Upon information and belief, attached as Exhibit B are true and correct copies of Marlon's exhibitor entry from the TIA website for the 2008 TIA Toy Fair and photographs of Marlon's booth at the 2008 Toy Fair advertising the JA-RU PUMPER VERSION 2.

11.    Upon information and belief, third parties approaching Marlon's booth were offered the JA-RU PUMPER VERSION 2 and orders for the JA-RU PUMPER VERSION 2 were taken at the 2008 TIA Toy Fair and at Marlon's New York City headquarters.

12.    By way of example only and without limitation, upon information and belief, Ja-Ru has directly and/or indirectly, through the internet, convention participation, distributors, retailers, an agent and/or otherwise, offered for sale, sold and/or delivered the JA-RU PUMPER VERSION 2, including within the State of New York and this judicial district.

13.    By way of example only and without limitation, upon information and belief, Marlon has directly offered for sale, sold and/or delivered the JA-RU PUMPER VERSION 2 within the State of New York and this judicial district.

14.    On information and belief, Ja-Ru derives substantial revenue from interstate commerce.

15.    The aforementioned actions subject Ja-Ru to personal jurisdiction under New York's "long arm" statute, C.P.L.R. §302, and the exercise of such jurisdiction comports with due process.

16. More specifically, upon information and belief, the aforementioned acts constitute Ja-Ru transacting business within the State of New York, contracting to supply goods in the State of New York and/or committing a tortious act outside the State of New York causing injury to person or property within the State of New York with the expectation or reasonable expectation that the tortious act will have consequences in the State of New York.

17. This Court has personal jurisdiction over defendant Ja-Ru under Rule 4 of the Federal Rules of Civil Procedure, in that Ja-Ru has committed acts of patent infringement having effects within the State of New York and this judicial district.

18. Upon information and belief, Ja-Ru is transacting and doing business as a manufacturer and seller of toys in this judicial district and is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

19. This Court has personal jurisdiction over defendant Marlon under Rule 4 of the Federal Rules of Civil Procedure, in that Marlon is domiciled within the State of New York and has committed acts of patent infringement within the State of New York and this judicial district.

## BACKGROUND

20. PTT is engaged, *inter alia*, in the design, manufacture, marketing, distribution, and sale of toys.  PTT sells toys to retailers and distributors.

21.     PTT currently sells in the United States a toy under the trademark "MAX LIQUIDATOR".  A true and correct copy of packaging material for PTT's MAX LIQUIDATOR is attached as Exhibit C.

22.     On July 11, 2006, the U.S. Patent and Trademark Office issued U.S. Design Patent No. Des. 524,881, which is entitled "FLOATING SQUIRTING TOY" (hereinafter "the '881 Design Patent").  The '881 Design Patent is valid and subsisting and is entitled to a presumption of validity under 35 U.S.C. §282.  A true and correct copy of the '881 Design Patent is attached as Exhibit D.

23.     PTT is the sole owner of the '881 Design Patent.

24.     On October 16, 2007, the U.S. Patent and Trademark Office issued U.S. Patent No. 7,281,642 B2, which is entitled "SQUIRTING TOY" (hereinafter "the '642 Patent").  The '642 Patent is valid and subsisting and is entitled to a presumption of validity under 35 U.S.C. §282.  A true and correct copy of the '642 Patent is attached as Exhibit E.

25.     PTT is the sole owner of the '642 Patent.

26.     MAX LIQUIDATOR is a commercial embodiment of the '881 Design Patent and the '642 Patent.

27.     Every MAX LIQUIDATOR sold by PTT in the United States has been marked "U.S. Patent No. D524,881" since shortly after issuance of the '881 Design Patent.

28.    Every MAX LIQUIDATOR sold by PTT in the United States has been marked "U.S. Patent No. 7,281,642" since shortly after issuance of the '642 Patent.

29.    Upon information and belief, Ja-Ru offered to sell to Wal-Mart, Inc. (hereinafter "Wal-Mart"), a toy under the trademark "SPLASH FUN FOAM PUMPER". Pictures of the toy believed to have been offered for sale by Ja-Ru to Wal-Mart are attached as Exhibit F.  Hereinafter the toy pictured in Exhibit F shall be referred to as "the JA-RU PUMPER VERSION 1".

30.    Upon information and belief, Ja-Ru offered to sell to Wal-Mart a toy slightly different from the JA-RU PUMPER VERSION 1 but under the identical "SPLASH FUN FOAM PUMPER" trademark.  Pictures of this slightly different toy are attached as Exhibit G.  Hereinafter the toy pictured in Exhibit G shall be referred to as "the JA-RU PUMPER VERSION 2".

31.    Upon information and belief, Ja-Ru manufactures, offers for sale, sells and/or imports in or into the United States toys which infringe the '642 Patent, which toys include JA-RU PUMPER VERSION 1 and JA-RU PUMPER VERSION 2.

32.    Upon information and belief, Ja-Ru induces others to offer for sale, sell, import and/or use in or into the United States toys which infringe the '642 Patent, which toys include JA-RU PUMPER VERSION 1 and JA-RU PUMPER VERSION 2.

33.     On information and belief, Ja-Ru has sold, offered to sell or imported in or into the United States the JA-RU PUMPER VERSION 2 knowing the JA-RU PUMPER VERSION 2 is an infringement of the '642 Patent.

34.    On or about December 10, 2007, PTT notified Ja-Ru of the rights conferred to PTT by the '881 Design Patent and the '642 Patent and the infringement of these rights by JA-RU PUMPER VERSION 1.  By this letter, PTT also demanded cessation of sale, offers for sale, importation and distribution of JA-RU PUMPER VERSION 1 and all products having similar structure and/or design configurations.  A true and correct copy of PTT's letter of December 10, 2007 is attached hereto as Exhibit H.

35.    Counsel for Ja-Ru responded to PTT's Exhibit H letter by sending the pictures attached as Exhibit G, i.e. pictures of the JA-RU PUMPER VERSION 2.

36.    On or about December 14, 2007, PTT presented counsel for Ja-Ru with a detailed infringement analysis of the '642 Patent with respect to the JA-RU PUMPER VERSION 2.  PTT also demanded immediate cessation of all sales, offers for sale and importation of JA-RU PUMPER VERSION 2.  A true and correct copy of the December 14, 2007 letter is attached as Exhibit I.

37.    Upon  information and belief, Ja-Ru's commercial activities relating to the making, using, offering for sale, selling, and/or importing into the United States the JA-RU PUMPER VERSION 1 and JA-RU PUMPER VERSION 2 have continued and are continuing with knowledge of the '642 Patent and the '881 Design Patent, in spite of the objectively high likelihood that Ja-Ru's actions constitute infringement of the '642 Patent and/or the '881 Design Patent.  These commercial activities are, at a minimum, in reckless disregard of PTT's rights under the '642 Patent and/or the '881 Design Patent.  Such acts of infringement have therefore been intentional, deliberate and willful.

38.     Upon information and belief, Marlon offers for sale, sells and/or imports in or into the United States toys which infringe the '642 Patent, which toys include the JA-RU PUMPER VERSION 2.

39.     Upon information and belief, Marlon has sold, offered to sell or imported in or into the United States the JA-RU PUMPER VERSION 2 knowing the JA-RU PUMPER VERSION 2 is an infringement of the '642 Patent.

40.     Upon  information and belief, Marlon's commercial activities relating to the making, using, offering for sale, selling, and/or importing into the United States the JA-RU PUMPER VERSION 2 have continued and are continuing with knowledge of the '642 Patent, in spite of the objectively high likelihood that Marlon's actions constitute infringement of the '642 Patent.  These commercial activities are, at a minimum, in reckless disregard of PTT's rights under the '642 Patent.  Such acts of infringement have therefore been intentional, deliberate and willful.

## COUNT  I

## DESIGN PATENT INFRINGEMENT BY JA-RU OF U.S. PATENT NO. DES. 524,881

41.     Paragraphs 1 through 40 of this Complaint are incorporated as if set forth in their entirety here.

42.     Ja-Ru has infringed and, on information and belief, is still infringing the '881 Design Patent by manufacturing, importing, selling and/or offering for sale the JA-RU PUMPER VERSION 1 and/or other toys which embody the subject matter claimed in the '881 Design Patent.

43.     Ja-Ru has actively induced others to infringe the '881 Design Patent by the sale, offer for sale, importation and/or use of the JA-RU PUMPER VERSION 1.

44.     Ja-Ru has sold, offered to sell or imported in or into the United States the JA-RU PUMPER VERSION 1 knowing the JA-RU PUMPER VERSION 1 is an infringement of the '881 Patent.  Thus, Ja-Ru is contributorily infringing the '881 Design Patent by its actions with regard to the JA-RU PUMPER VERSION 1.

45.     The JA-RU PUMPER VERSION 1 incorporates the novel, ornamental features of the design in PTT's '881 Design Patent.

46.     The '881 Design Patent's novel, ornamental features appropriated by JA-RU PUMPER VERSION 1 are not functional.

47.     The novel, ornamental features of the '881 Design Patent have been appropriated by JA-RU PUMPER VERSION 1 such that the purchaser would be deceived as to the source of the products.

48.     The novel, ornamental features of the '881 Design Patent appropriated by the JA-RU PUMPER VERSION 1 render the JA-RU PUMPER VERSION 1 and MAX LIQUIDATOR confusingly similar and likely to be confused by the relevant purchaser, giving the attention the purchaser normally gives.

49.     Upon information and belief, Ja-Ru offered to sell the JA-RU PUMPER VERSION 1, took orders for the JA-RU PUMPER VERSION 1 and filled those orders with the JA-RU PUMPER VERSION 2.

50.    Upon information and belief, Ja-Ru had notice of the '881 Design Patent prior to offering for sale the JA-RU PUMPER VERSION 1 to Wal-Mart.

51.    Upon information and belief, Ja-Ru knowingly and willfully infringed the '881 Design Patent.

52.    This is an exceptional case within the provisions of 35 U.S.C. §285 and, accordingly, PTT is entitled to an award of reasonable attorney's fees.

53.    PTT has suffered monetary damage as a result of Ja-Ru's acts complained of herein, in an amount thus far not determined.

54.    PTT has no adequate remedy at law.

## COUNT II

### PATENT INFRINGEMENT BY JA-RU AND MARLON OF U.S. PATENT NO. 7,281,642

55.    Paragraphs 1 through 54 of this Complaint are incorporated as if set forth in their entirety here.

56.    Ja-Ru has infringed and is still infringing the '642 Patent by manufacturing, importing, selling and/or offering for sale the JA-RU PUMPER VERSION 1, JA-RU PUMPER VERSION 2 and/or other toys which embody the subject matter claimed in the '642 Patent.

57.    Ja-Ru has actively induced others to infringe the '642 Patent by the sale, offer for sale, importation and/or use of the JA-RU PUMPER VERSION 1, JA-RU

PUMPER VERSION 2 and/or other toys which embody the subject matter claimed in the '642 Patent.

58.   Ja-Ru has sold, offered to sell or imported in or into the United States the JA-RU PUMPER VERSION 1 and JA-RU PUMPER VERSION 2 knowing these two toys infringe the '642 Patent.  Thus, Ja-Ru is contributorily infringing the '642 Patent by its actions with regard to the JA-RU PUMPER VERSION 1 and JA-RU PUMPER VERSION 2.

59.   Upon information and belief, Ja-Ru had notice of the '642 Patent at least as early as December 10, 2007.

60.   Marlon has infringed and is still infringing the '642 Patent by importing, selling and/or offering for sale the JA-RU PUMPER VERSION 2 and/or other toys which embody the subject matter claimed in the '642 Patent.

61.   Marlon has sold, offered to sell or imported in or into the United States the JA-RU PUMPER VERSION 2 knowing the toy infringes the '642 Patent.

62.   Upon information and belief, Marlon had notice of the '642 Patent.

63.   Upon information and belief, Marlon's infringement of the '642 Patent is knowing and willful.

64.   This is an exceptional case within the provisions of 35 U.S.C. §285 and, accordingly, PTT is entitled to an award of reasonable attorney's fees.

65.    PTT has suffered monetary damage as a result of Marlon and Ja-Ru's acts complained of herein, in an amount thus far not determined.

66.    PTT has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, PTT pray for judgment that:

A.    This Court declares that Ja-Ru has infringed U.S. Design Patent No. Des. 524,881 ("the '881 Design Patent") and that such infringement has been willful;

B.    This Court declares that Ja-Ru and Marlon have infringed U.S. Patent No. 7,281,642 ("the '642 Patent") and that such infringement has been willful;

C.    Ja-Ru and their officers, agents, servants, employees and attorneys and any and all persons in active concert or participation with Ja-Ru, be enjoined from making, using, offering for sale, selling, and/or importing into the United States toys that infringe the '881 Design Patent or actively inducing infringement of or contributorily infringing the '881 Design Patent;

D.    Ja-Ru, Marlon and their officers, agents, servants, employees and attorneys and any and all persons in active concert or participation with Ja-Ru, be enjoined from making, using, offering for sale,

selling, and/or importing into the United States toys that infringe the '642 Patent;

E.  Ja-Ru and their officers, agents, servants, employees and attorneys and any and all persons in active concert or participation with Ja-Ru, be enjoined from inducing infringement of the '642 Patent or contributorily infringing the '642 Patent;

F.  PTT be awarded Ja-Ru's total profit from Ja-Ru's infringement of the '881 Design Patent, pursuant to 35 U.S.C. §289, and that the damages be enhanced due to the willfulness of the infringement, in accordance with 35 U.S.C. §284;

G.  PTT be awarded damages adequate to compensate PTT for Ja-Ru and Marlon's infringement of the '642 Patent, including PTT's profits lost as a result of infringement of the '642 Patent, and that the damages be enhanced due to the willfulness of the infringement, in accordance with 35 U.S.C. §284;

H.  Ja-Ru and Marlon be ordered to deliver up for destruction all toys in their possession, custody or control that infringe the '642 Patent and/or the '811 Design Patent;

I.  This case is exceptional under 35 U.S.C. §285 and that PTT be awarded their costs and attorney's fees, pursuant to 35 U.S.C. §285; and

J.    PTT be awarded such other and further relief as the Court deems just and equitable.

### Jury Demand

PTT hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

AMSTER, ROTHSTEIN & EBENSTEIN, LLP
90 Park Avenue
New York, New York  10016
Telephone No.: (212) 336-8000

Attorneys for Prime Time Toys, Ltd.

Dated:   March 24, 2008          By:_____

Neil M. Zipkin (NZ 4718)
Chester Rothstein (CR 1417)
Michael P. Kenney (MK 0740)

A




WELCOME

NETWORKING ZONE

EXPO HALL

Floor Plan

Flash Floorplan

Exhibitor Search

Exhibitor List

EXHIBITOR LOGIN

Exhibitor Profile

Attendee Search

ATTENDEE LOGIN

My Profile

My Expo Plan

My Appointment Calendar

My Appointment Statistics

Exhibitor Search

Why Participate?

Print this page



## JA-RU, Inc. - General Trading

Booth # 5367 Map It

4030 Phillips Hwy
Jacksonville, FL 32207-6835
United States
Phone: 904-733-9311
Email: dannyb@jaru.com

| Exhibitor Contact |

**Lines Represented:**

**Profile:**
Rack and Impulse / Novelty toys

**Categories**
All
- Novelties
- Rack Merchandise

| Add To My Expo Plan |

<< Previous | Back to the Search | Next >>



B

  

**WELCOME**
**EXPO HALL**
**Floor Plan**
**Flash Floorplan**
**Exhibitor Search**
**EXHIBITOR LOGIN**
**Print this page**

PRINT THIS PAGE →

## Marlon Creations
Booth/Room # 2853 Map It

Michael Rehns
35-01 36th Ave.
Long Island City, NY 11106-1331
United States
Phone: 718-361-2088
Email: marlontoys@aol.com
URL WWW.MARLON.COM

**Lines Represented:**

**Product Lines:**
KUMON books, KIDZUP LEARNING AIDS, TORMONT Books, GRANDRE.
MODERN, & BENDON books SCULPEY clays, Arts & Crafts Products, 4M
EASTCOLIGHT Craft & Science Kits, Science Toys, MEGCOS, MOTORMA
DUNECRAFT ,MAGIC SETS, Infant Toys, Musical Instruments, GIGO Dolls
Bubbles & Outdoor Toys.

**Categories**
All
- Arts & Crafts, Kits & Supplies
- Construction Toys & Sets
- Games - Board/Tabletop
- Toddler Toys & Accessories

<< Previous | Back to the Search | Next >>







C



# PRIME TIME TOYS, LTD.

Item #8019 MAX LIQUIDATOR™
**ELIMINATOR**

**MADE IN CHINA**

Package and contents © 2006 Prime Time Toys Ltd, Suite 5,
2/F, Kwong Sang Hong Centre, 151-153 Hoi Bun Road,
Kwun Tong, Hong Kong. All Rights Reserved.
Max Liquidator™ and the shape of the Max Liquidator™
are trademarks of Prime Time Toys, Ltd. Product
specifications are subject to change without notice.
Safety tested: Meets or exceeds ASTM F963

**PATENT NO. D524,881**
**Trademark No. 3,100,716**
**Other Patents Pending**

PT-8019-3-07

7 29747 80190 8



D

US00D524881S

(12) **United States Design Patent**
Orlowski et al.

(10) Patent No.: **US D524,881 S**

(45) Date of Patent: ✶✶ **Jul. 11, 2006**

(54) **FLOATING SQUIRTING TOY**

(75) Inventors: **Boguslaw Orlowski,** Oceanside, CA (US); **Francis Chia,** Kowloon (HK)

(73) Assignee: **Prime Time Toys, Ltd.** (HK)

(✶✶) Term: **14 Years**

(21) Appl. No.: **29/235,506**

(22) Filed: **Aug. 3, 2005**

**Related U.S. Application Data**

(63) Continuation of application No. 10/942,326, filed on Sep. 16, 2004.

(51) LOC (8) Cl. .................................................. **21-01**
(52) U.S. Cl. ..................................................... **D21/572**
(58) Field of Classification Search ............... D21/398, D21/400, 402, 473, 567–575, 801, 803; D15/7; D22/100–103, 108; D23/213, 223–225, 228, D23/262, 266, 231, 232; D8/2, 14.1, 31, D8/47, 82, 83, 107, 303, 307, 310, 321, 322, D8/DIG. 7; D4/114, 115; D32/45; 446/153, 446/156, 159, 176, 180, 196, 211, 402, 404, 446/473, 475, 483, 486, 487, 489, 491; 441/88, 441/125, 129, 131, 133, 136; 472/52, 128; 417/61, 234, 236, 518, 545, 552, 555.1, 556, 417/557, 560, 562, 569, 570, 572; 124/55, 124/63, 65, 66, 69, 79; 222/79, 175, 183, 222/379, 383.1, 386, 389, 401, 400.5, 400.8, 222/510; 239/154, 211, 288.5, 289, 525, 239/529, 530, 532, 541, 547, 587.1; 273/349, 273/350
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 213,050 A | 3/1879 | Lewis | |
| D26,839 S | 3/1897 | Lines | |
| 1,031,526 A | 7/1912 | Cloud, Jr. | |
| 1,394,456 A | 10/1921 | Wanat | |
| 2,573,375 A | 10/1951 | Winstead | |
| D240,130 S | 6/1976 | Folke | |
| 4,597,527 A | 7/1986 | Sands | |
| 4,627,796 A | 12/1986 | Moore | |
| 4,673,007 A | ✶ 6/1987 | Huang | 141/95 |
| 4,809,483 A | ✶ 3/1989 | Lovik | 53/434 |
| 5,009,413 A | 4/1991 | Allen | |
| 5,181,644 A | ✶ 1/1993 | Ferrell | 227/147 |
| 5,199,114 A | 4/1993 | Christopher | |
| 5,255,708 A | ✶ 10/1993 | Liparoto et al. | 141/67 |
| D352,093 S | ✶ 11/1994 | Kaycha | D23/231 |
| 5,683,250 A | ✶ 11/1997 | Paivanas | 434/32 |

(Continued)

*Primary Examiner*—Catherine Tuttle
(74) *Attorney, Agent, or Firm*—Amster, Rothstein & Ebenstein LLP

(57) **CLAIM**

The ornamental design for a floating squirting toy, as shown and described.

**DESCRIPTION**

FIG. 1 is an isometric view from the front and one side of a floating squirting toy showing our new design;

FIG. 2 is a side elevational view thereof, all side elevational views and all plan views being identical; and,

FIG. 3 is a front elevational view thereof.

The stippling in the drawing represents an outer layer of foam.

The front and rear caps illustrated in broken lines represent an environment of use and are not a part of the claimed design.

In FIGS. 1 and 2, the two jagged vertical lines represent indeterminate length and are not a part of the claimed design.

In FIG. 1, the broken lines extending from a hole in the front cap represent a liquid being squirted by the toy as an environment of use and are not a part of the claimed design.

In FIG. 1, the double-headed arrow shown in broken lines indicates possible movements of the front and back relative to one another as different use orientations and does not form a part of the claimed design.

**1 Claim, 2 Drawing Sheets**



**US D524,881 S**

Page 2

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,928,053 A | | 7/1999 | Henderson |
| 5,992,697 A | | 11/1999 | James |
| 6,027,393 A | * | 2/2000 | O'Rourke .................... 446/153 |
| 6,722,679 B1 | * | 4/2004 | Englert .................... 280/288.4 |
| 6,790,112 B1 | * | 9/2004 | Kirk ........................... 441/129 |

| | | | |
|---|---|---|---|
| 6,843,695 B1 | * | 1/2005 | Jackson et al. .............. 441/129 |
| 2003/0156950 A1 | * | 8/2003 | Ostrowiecki ................. 417/234 |
| 2005/0106963 A1 | * | 5/2005 | Ross ........................... 441/129 |
| 2005/0184098 A1 | * | 8/2005 | Dixon ......................... 222/192 |

* cited by examiner




**FIG. 1**



**FIG. 2**



**FIG. 3**



E

US007281642B2

## (12) United States Patent
### Orlowski

(10) Patent No.: **US 7,281,642 B2**
(45) Date of Patent: **Oct. 16, 2007**

(54) **SQUIRTING TOY**

(75) Inventor: **Boguslaw Orlowski**, Oceanside, CA (US)

(73) Assignee: **Prime Time Toys, Ltd.**, Kwun Tong (HK)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 219 days.

(21) Appl. No.: **10/942,326**

(22) Filed: **Sep. 16, 2004**

(65) **Prior Publication Data**

US 2006/0060604 A1      Mar. 23, 2006

(51) **Int. Cl.**
| | |
|---|---|
| *A63H 3/18* | (2006.01) |
| *G01F 11/00* | (2006.01) |
| *A62C 31/02* | (2006.01) |

(52) **U.S. Cl.** ....................... 222/79; 222/409; 239/394

(58) **Field of Classification Search** .................. 222/79, 222/409; 446/153, 473; 482/55, 111; 92/249
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

213,050 A      3/1879   Lewis

| | | | |
|---|---|---|---|
| D26,839 S | 3/1897 | Lines | |
| 1,031,526 A | 7/1912 | Cloud, Jr. | |
| 1,394,456 A | 10/1921 | Wanat | |
| 2,573,375 A | 10/1951 | Winstead | |
| D240,130 S | 6/1976 | Folke | |
| 4,597,527 A | 7/1986 | Sands | |
| 4,627,796 A | 12/1986 | Moore | |
| 5,009,413 A | 4/1991 | Allen | |
| 5,199,114 A | 4/1993 | Christopher | |
| 5,231,951 A * | 8/1993 | Tagar et al. | ............... 114/345 |
| 5,266,069 A * | 11/1993 | Thorne | ........................ 482/111 |
| 5,928,053 A | 7/1999 | Henderson | |
| 5,992,697 A | 11/1999 | James | |

* cited by examiner

*Primary Examiner*—Gregory L. Huson
*Assistant Examiner*—Kristie A. Mahone
(74) *Attorney, Agent, or Firm*—Amster, Rothstein & Ebenstein

(57) **ABSTRACT**

A squirting toy is comprised of a cylindrical housing and a piston that slides within to force water into or out of the housing via a hole therein. The housing is encased within a polyethylene closed cell foam shell. The shell is non-absorbing, so that the foam remains buoyant and keeps the gun afloat indefinitely when left in water. The foam is soft, so that the gun is not a safety hazard when left floating in a swimming pool.

**13 Claims, 4 Drawing Sheets**





Fig.1.

Fig.2.



*Fig. 3.*

Case 1:08-cv-00449-MGC    Document 7    Filed 04/16/2008    Page 34 of 50



*Fig. 4.*



*Fig.5.*

US 7,281,642 B2

| 1 | 2 |

## SQUIRTING TOY

### FIELD OF THE INVENTION

The present invention is a water squirting apparatus for use at play. More specifically, it is a soft floating tubular piston type squirt gun for use such as in a swimming pool or swimming area by participants in or adjacent to the water.

### BACKGROUND AND OBJECTS OF THE INVENTION

Squirt guns are well known in many forms in the prior art. Numerous squirt guns and squirting toys are made and have been made over the years for use by persons while swimming in or standing adjacent to a swimming pool, which are adapted to quickly take in water from the swimming pool for squirting. One such toy is called Water Stix™ and is sold by Hearthsong Inc. This toy, representative of many such squirting toys, is basically comprised of a housing having a nozzle at its squirting end. A piston, which includes a graspable handle, is adapted to slide within the housing so that, when the nozzle end of the housing is submerged in the pool and the piston is pulled backwards, water is drawn into the housing through the nozzle. And when the piston is subsequently forced forwardly, that water is forced from the housing, through the nozzle, towards a target, in a powerful stream.

Additionally, many squirt guns of the prior art are constructed in a manner that entraps air and thereby inadvertently enables those guns to partially float in water. The degree of such buoyancy is relative to the amount of water that has been taken into the gun and the longevity of such buoyancy is relative to the to the amount of air leakage from the housing.

There are also floating toy "swimming noodles" in the prior art, which are made of resilient floating closed-cell polymer foam. These toys are used to provide buoyancy to the user while swimming. Because these toys are often left floating in the pool when not in use, their softness eliminates the safety threat that they would otherwise pose.

It is therefore an object of the present invention to provide an improved squirting toy that floats fully atop the surface of the water, whether filled with or empty of water.

It is a further object to provide a soft squirting toy that is safer that squirting toys of the prior art.

It is a further object to provide a squirting toy that is both buoyant and soft.

It is a further object to provide such a squirting toy that has a similar appearance to a "swimming noodle".

Further objects and advantages of the invention will be apparent upon a review of the following description and drawings of the invention, including the preferred embodiment thereof.

### SUMMARY OF THE INVENTION

The present invention comprises a squirting toy that is housed within a polyethylene (PE) closed cell foam shell. The closed cell shell is non-absorbing, so that the foam remains buoyant and keeps the gun afloat indefinitely. The foam is soft, so that the gun is not a safety hazard when left floating in a swimming pool. In the preferred embodiment, the squirting toy is comprised of a cylindrical housing and a piston that slides within to force water into or out of the housing via a hole therein. The foam shell of the preferred

embodiment is similar in size and shape to a "swimming noodle", and is therefore more attractive to a child who is familiar with such.

A more complete understanding of the invention will be realized upon review of the following description and drawings of the Preferred embodiment of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an action view of a squirting toy according to the preferred embodiment of the invention showing water being expelled there-from.

FIG. 2 is a cross-sectional view through the toy of FIG. 1 in its retracted/empty state.

FIG. 3 is an enlarged partial section of the toy of FIG. 1 floating in water,

FIG. 4 is an action cross-sectional view showing the intake of water into the toy of FIG. 1, and

FIG. 5 is an action cross-sectional view showing the expulsion of water from the toy of FIG. 1.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The Preferred embodiment of the invention is shown in FIGS. 1 though 5, where there is depicted a toy 100 for squirting a water stream 102, and which is adapted to float on the water surface 104.

The toy comprises a rigid tubular housing 106 that encloses a hollow cylindrical chamber 110. The forward end 112 of the tubular housing is closed except for a small hole 114. Piston 116 slides longitudinally within chamber 110 and is sealed against the cylindrical inner surface 120 of the chamber by o-ring 122, which is seated within groove 124 of the piston. The piston separates the chamber 110 into a forward portion 110A and a rear portion 110B. The piston 116 is rigidly connected to shaft 124 at the forward end 126 thereof. Slide bushing 128 supports shaft 124 at the rear end 130 of the tubular housing 106, while allowing longitudinal movement relative thereto. Handle portion 132 is rigidly connected to shaft 124 at the rearward end 134 thereof. Expansion of the handle portion 132 relative to the tubular housing 106, while hole 114 is below the water surface 104, as depicted in FIG. 4, causes water to be inhaled into the expanding forward chamber portion 110A, through hole 114. Subsequent retraction of the handle portion 132 relative to the tubular housing 106 causes that water to be exhaled through hole 114 in a powerful stream 102.

Tubular shell 138, preferably made of closed-cell polyethylene foam, surrounds tubular housing 106, to provide both a soft protective surface and buoyancy. Other materials may be substituted for polyethylene foam, such as ethylene vinyl acetate closed-cell foam.

Handle portion 132 also includes handle shell 140, which is preferable made of the same foam, and is rigidly connected shaft 124 by means of support bushings 144 and 146. Alternatively, other materials having sufficient buoyancy, softness, and water impermeability, such as polyurethane foam, may be used for both the tubular and handle shells. Or the shells could instead be replaced by blow molded or rotationally molded air-filled cylindrical bladders. When the handle portion is retracts as in FIG. 2, the shells create a similar appearance and feel to those of a common "swimming noodle".

It will be appreciated by those skilled in the applicable arts that the foregoing is merely one of many possible

US 7,281,642 B2

3

embodiments of the invention, and that the invention should therefore only be limited according to the following claims.

I claim:

1. An expandable and contractible toy for receiving and storing water when disposed towards an expanded configuration, and squirting water when disposed towards a contracted configuration, the toy being encased in a soft material along its entire length when in the contracted configuration, the soft material having a buoyancy sufficient to keep the toy afloat in water when the toy is filled to its maximum capacity with water, the toy having a cylinder shape and a uniform cross section along its entire length when in the contracted configuration.

2. The toy of claim 1 wherein said soft material is closed-cell polymer foam.

3. The toy of claim 1 wherein said material is closed-cell polyethylene foam.

4. The toy of claim 1 wherein said material is closed-cell ethylene vinyl acetate foam.

5. A toy for receiving, storing, and squirting water and comprising a tubular housing defining a chamber for receiving and storing the water, said tubular housing having a first end and a second end, said means for expansion or contraction and said housing having a hole to allow communication between said chamber and the outside environment, whereby said toy is adapted to inhale the water through said hole while said hole is submerged during said expansion of said chamber, and said toy is adapted to exhale the water through said hole during said contraction of said chamber, and further comprising an outer shell comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water, the outer shell covering the entire tubular housing from the first end to the second end to provide the toy with a cylinder shape, said tubular housing having a uniform cross-section along its entire length when said chamber is fully contracted.

6. The toy of claim 5 wherein said soft material is closed-cell polymer foam.

7. The toy of claim 5 wherein said material is closed-cell polyethylene foam.

4

8. The toy of claim 5 wherein said material is closed-cell ethylene vinyl acetate foam.

9. The toy of claim 5 wherein said chamber comprises a cylinder and said means for expansion and contraction of said chamber is a piston sealingly engaging said chamber's interior cylindrical surface, said piston adapted for longitudinal movement within and relative to said cylinder to alternately expand and contract the volume within the chamber.

10. The toy of claim 5 wherein said soft material is closed-cell polymer foam.

11. The toy of claim 5 wherein said material is closed-cell polyethylene foam.

12. The toy of claim 5 wherein said material is closed-cell ethylene vinyl acetate foam.

13. A toy for receiving, storing, and squirting water and comprising a tubular housing defining a chamber for receiving and storing the water, said tubular housing having a first end and a second end, said chamber having means for expansion or contraction and said housing having a hole to allow communication between said chamber and the outside environment, whereby said toy is adapted to inhale the water through said hole while said hole is submerged during said expansion of said chamber, and said toy is adapted to exhale the water through said hole during said contraction of said chamber, and further comprising an outer shell comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water, said outer shell covering the tubular housing from adjacent the first end to adjacent the second end, said chamber comprising a cylinder and said means for expansion and contraction of said chamber being a piston sealingly engaging said chamber's interior cylindrical surface, said piston adapted for longitudinal movement within and relative to said cylinder to alternately expand and contract the volume within the chamber, said tubular housing having a uniform cross-section along its entire length when said chamber is fully contracted.

* * * * *

F



388760.1

G



H

# AMSTER ROTHSTEIN & EBENSTEIN LLP

*Intellectual Property Law*

90 Park Avenue
New York NY 10016
Main   212 336 8000
Fax    212 336 8001
Web    www.arelaw.com

*Partners*
Morton Amster
Jesse Rothstein *(1934 - 2003)*
Daniel Ebenstein
Philip H. Gottfried
Michael J. Berger
Neil M. Zipkin
Anthony F. Lo Cicero
Kenneth P. George
Abraham Kasdan, Ph.D.
Ira E. Silfin
Chester Rothstein
Craig J. Arnold

Kenneth M. Bernstein
Joseph M. Casino
Michael V. Solomita

*Senior Counsel*
Charles R. Macedo
John S. Economou
Marion P. Metelski

*Associates*
Patrick Boland*
Holly Pekowsky
Michael P. Kenney

Max Vern
Karl J. Kolbinger
Brian A. Comack
Richard S. Mandaro
Marc J. Jason
Elie H. Gendloff, Ph.D.
David Mitnick
Charles W. Rath
David A. Boag
Matthieu Hausig
Jung S. Hahn
Reiko Kaji
Alan D. Miller, Ph.D.

Norajean McCaffrey
Benjamin M. Halpern*
Matthew A. Fox
Michael J. Kasdan
Rebecca R. Eisenberg
Jason M. Rockman
Stuart Shapley
Howard Wizenfeld
Steven B. Gauthier
Peter R. Vogel*
Brett M. Pinkus*

*Not admitted in New York*

December 10, 2007

**via Federal Express**

Neil M. Zipkin
Direct 212 336 8120
E-mail nzipkin@arelaw.com

President
Ja-Ru, Inc.
4030 Phillips Highway
Jacksonville, FL 32207
Tel: 800-231-3470

Re:    Prime Time Toys, Inc.
        Notice of Intellectual Property Rights
        Our File: 69281/88

Dear Sir:

We are U.S. intellectual property counsel to Prime Time Toys, Inc. ("Prime Time"). Prime Time is a designer, manufacturer, and seller of original, innovative high quality toys and games, which Prime Time protects through patents, trademarks, and copyrights. One such toy is the water product sold under the trademark MAX LIQUIDATOR. A representative photograph of the MAX LIQUIDATOR product is attached as Exhibit A.

Prime Time is the owner of U.S. Patent No. 7,281,642 ("the '642 Patent") entitled "Squirting Toy" (a copy of which is attached to this letter as Exhibit B) and United States Design Patent No. D524,881 ("the '881 Design Patent") entitled "Floating Squirting Toy" (a copy of which is attached to this letter as Exhibit C). Additionally, Prime Time is the owner of other pending patent applications covering related designs and subject matter, in the U.S. and throughout the world.

Prime Time has become aware of your company's offer for sale in the United States of the "SPLASH FUN/FOAM PUMPER" product, shown below:

386149.1

Ja-Ru, Inc.                    -2-                    December 10, 2007






     Such product violates Prime Time's intellectual property rights. Specifically, your SPLASH FUN/FOAM PUMPER product literally infringes both the '642 Patent and the '881 Design Patent.

     We have also learned that Ja-Ru is offering products similar to the SPLASH FUN/FOAM PUMPER. Those having a similar appearance to the SPLASH FUN/FOAM PUMPER will infringe the '881 Design Patent, either literally or under the doctrine of equivalents. Regardless of any alterations to their ornamental appearance, any Ja-Ru product having a similar pump structure and buoyant soft shell to the SPLASH FUN/FOAM PUMPER will infringe the '642 Patent. We understand that such similar products have been offered for sale to Wal-Mart.

     It is Prime Time's policy to require infringers to (i) immediately cease all infringement of its intellectual property rights and recall infringing products from retailers; and (ii) compensate Prime Time for past infringement. The owner of a patent is entitled to both injunctive relief and a recovery of monetary damages. In the case of

Ja-Ru, Inc.                          -3-                    December 10, 2007

design patent infringement, the patent owner can recover all of the infringers' profits, i.e. profits of the manufacturer and ALL subsequent infringing sellers.

Based on the foregoing, Prime Time demands that Ja-Ru:

1. *Immediately* cease all sales, offers for sale and shipments of the SPLASH FUN/FOAM PUMPER and all products having similar structure and/or design configurations (hereinafter the "Accused Floating Squirting Toys").

2. Notify each and every distributor and retailer to whom the Accused Floating Squirting Toys have been sold by Ja-Ru, including Wal-Mart, to *immediately* cease sale, offer for sale and shipments of the Accused Floating Squirting Toys and return remaining inventory to Ja-Ru.

3. Provide Prime Time with all sales information regarding the Accused Floating Squirting Toys and agree to pay to Prime Time reasonable compensation for the past infringement of its intellectual property rights.

4. Agree, in writing, to respect the intellectual property rights of Prime Time in the '642 Patent and the '881 Design Patent in the future.

Please notify us as soon as possible, but no later than December 13, 2007, of your acceptance of these terms.

Nothing in this letter is intended to waive our client's rights, all of which are expressly reserved.

Very truly yours,

AMSTER, ROTHSTEIN & EBENSTEIN LLP

Neil Zipkin

NMZ/vj/cab
Attachments

cc:    Prime Time Toys, Inc.

386149.1

I

# AMSTER ROTHSTEIN & EBENSTEIN LLP

*Intellectual Property Law*

90 Park Avenue
New York NY 10016

Main  212 336 8000
Fax    212 336 8001
Web   www.arelaw.com

*Partners*
Morton Amster
Jesse Rothstein (1914 - 2003)
Daniel Ebenstein
Philip H. Gottfried
Michael J. Berger
Neil M. Zipkin
Anthony F. Lo Cicero
Kenneth P. George
Abraham Kasdan, Ph.D.
Ira E. Silfin
Chester Rothstein
Craig J. Arnold

Kenneth M. Bern.....t
Joseph M. Casino
Michael V. Solomita

*Senior Counsel*
Charles R. Macedo
John S. Economou
Marion P. Metelski

*Associates*
Patrick Boland*
Holly Pekowsky
Michael P. Kenney

Max Vern
Karl J. Kolbinger
Brian A. Comack
Richard S. Mandaro
Marc J. Jason
Elie H. Gendloff, Ph.D.
David Mitnick
Charles W. Rath
David A. Boag
Matthieu Hausig
Jung S. Hahm
Reiko Kaji
Alan D. Miller, Ph.D.

Norajean McCaffrey
Benjamin M. Halpern*
Matthew A. Fox
Michael J. Kasdan
Rebecca R. Eisenberg
Jason M. Rockman
Stuart Shapley
Howard Wizenfeld
Steven B. Gauthier
Peter R. Vogel
Brett M. Pinkus*

*Not admitted in New York

December 14, 2007

<u>Via E-Mail and First Class Mail</u>

Neil M. Zipkin
Direct 212 336 8120
E-mail nzipkin@arelaw.com

Lewis Anten, Esq.
Lewis Anten, P.C.
16830 Ventura Blvd #411
Encino, CA 91436-1726
818-501-3535

Re:    Infringement of Prime Time Toys, Inc., Intellectual Property Rights
        by Ja-Ru Inc.
        Our File: 69281/88

Dear Lewis,

It was a pleasant to speak with you the other day and thank you for promptly sending a sample of Ja-Ru's SPLASH FUN FOAM PUMPER ("Ja-Ru's Squirting Toy"). For purposes of clarity, Ja-Ru's Squirting Toy received via Federal Express on December 12, 2007 is shown:




We have considered Ja-Ru's Squirting Toy in light of the properly construed claims of U.S. Patent No. 7,281,642 ("the '642 Patent") and find that such

Lewis Anten, Esq.                    -2-                    December 14, 2007

product infringes many of the claims of the '642 Patent. For your convenience, we provide the following claim breakdown for exemplary Claim 5:

| Claim 5 of U.S. Patent No. 7,281,642 | Ja-Ru's SPLASH FUN FOAM PUMPER |
|---|---|
| A toy for receiving, storing, and squirting water and comprising | Ja-Ru's toy receives, stores and squirts water. |
| a tubular housing defining a chamber for receiving and storing the water, | Ja-Ru's toy has a hard plastic housing shaped like a tube, the housing defining a chamber that receives and stores water. |
| said tubular housing having a first end and a second end, | Ja-Ru's housing has a first end and a second end. |
| said chamber having means for expansion or contraction and | The chamber is supplied with a means for expansion and contraction, i.e. a piston attached to a handle. |
| said housing having a hole to allow communication between said chamber and the outside environment, | Ja-Ru's housing has a hole allowing communication between the chamber and the environment. |
| whereby said toy is adapted to inhale the water through said hole while said hole is submerged during said expansion of said chamber, and | The hole of Ja-Ru's toy inhales water when the chamber is expanded. |
| said toy is adapted to exhale the water through said hole during said contraction of said chamber, and further comprising | The hole of Ja-Ru's toy exhales water during contraction of the chamber. |
| an outer shell comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water, | Ja-Ru's toy has an outer shell of a soft foam material that provides buoyancy sufficient to keep the toy afloat when the chamber is full of water. |
| the outer shell covering the entire tubular housing from the first end to the second end to provide the toy with | The outer shell covers the tubular housing from the first end to the second end and provides the toy with a |

Lewis Anten, Esq.                    -3-                    December 14, 2007

| a cylinder shape, | cylindrical shape. |
| --- | --- |
| said tubular housing having a uniform cross-section along its entire length when said chamber is fully contracted. | The tubular housing has a uniform round cross section along its entire length when the chamber is fully contracted.  In fact the tubular housing of Ja-Ru's toy is virtually indistinguishable from the "housing 106" of the '642 Patent.  See, e.g. FIGS. 3. |

Based on your statements and the differences between Ja-Ru's Squirting Toy and Ja-Ru's earlier prototype, i.e. the sample referenced in our letter of December 7, 2007, we believe it is appropriate to focus on the last two elements of Claim 5.

These final two claim elements of Claim 5 involve the "tubular housing" and "outer shell" of the claimed toy. The "tubular housing 106" and the "shell 138" of the '642 Patent are clearly described in the specification of the '642 Patent at Col. 2, lines 30-54 and illustrated in FIGS. 1-5. Based on the claim language and specification of the '624 Patent, there is absolutely no ambiguity regarding the meaning of the claim terms "tubular housing" and "shell".

The plastic housing of Ja-Ru's Squirting Toy is essentially identical to the "tubular housing 106" described at Col. 2, lines 30-49 of the '642 Patent and shown in FIGS. 2-5. The shell of Ja-Ru's squirting toy covers this housing from the first end to the second end thereof, imparts a cylindrical shape to Ja-Ru's Squirting Toy and provides buoyancy to keep the toy afloat when full of water. As such, it is clear to us that Ja-Ru's Squirting Toy literally infringes at least Claim 5 of the '642 Patent.

Based on the foregoing, Prime Time demands that all sales, offers for sale and importation of Ja-Ru's Squirting Toy immediately cease.  To the extent that shipments to customers in the United States have already occurred, Prime Time demands that Ja-Ru report the total quantity shipped and identify the customers receiving the toys.

To the extent that you believe that we have misconstrued the claim language of the '642 Patent, please provide Ja-Ru's proposed construction of these terms, detailed reasoning regarding the need to construe these terms, i.e. a showing of some ambiguity of these terms to a worker skilled in the art, and a detailed explanation of the intrinsic and extrinsic evidence supporting Ja-Ru's proposed construction.

386824.1

Lewis Anten, Esq.                          -4-                    December 14, 2007

Given the approaching holidays, please respond to this letter at your earliest opportunity prior to December 21, 2007.

Nothing in this letter is intended to waive our client's rights, all of which are expressly reserved.

Very truly yours,

AMSTER, ROTHSTEIN & EBENSTEIN LLP

Neil M. Zipkin

NMZ/cb

cc:    Prime Time Toys, Inc.

386824.1